UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| In re: | } |
| JOE RUSH BURT and | } |
| LYNN BURT, | } Case No. 01-43254-JJR-7 |
|           Debtors. | } |

| | |
|---|---|
| ROCCO J. LEO, as Trustee of the Estate | } |
| of Joe Rush Burt and Tracy Burt, Debtors, | } |
| | } |
|           Plaintiff, | } |
| v. | } A. P. No. 09-40016-JJR |
| | } |
| JOE RUSH BURT and | } |
| LYNN BURT, | } |
| | } |
|          Defendants. | } |

## MEMORANDUM OPINION

This matter came before the Court on the Defendants' Motion for Partial Summary Judgment (AP Doc. 17) and the Trustee's Response to Defendants' Motion for Partial Summary Judgment and Memorandum Brief in Support Thereof (AP Doc. 22). The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); therefore, the Court has authority to enter a final order.

For the reasons stated below, the Court is granting the Defendants' Motion. In compliance with Rule 7052(a) of the Federal Rules of Bankruptcy Procedure, the following shall constitute the Court's findings of facts and conclusions of law.[1]

---

[1] All "Rule" references are to the Federal Rules of Bankruptcy Procedure. "Fed.R.Civ.P." references are to the Federal Rules of Civil Procedure.

FINDINGS OF FACTS:

On September 5, 2001, the Defendants filed a case under chapter 13 of the Bankruptcy Code,[2] and on August 23, 2006 they converted the case to one under chapter 7. In their schedules the Defendants listed two parcels of real property which they valued at $62,700.00. Their schedules also reflected the real property was encumbered by a mortgage in the approximate amount of $45,000.00 held by First State Bank.[3] Thus on the petition date, according to the Defendants' schedules, they had approximately $17,700.00 equity in their real property. During the course of the chapter 13 case the Defendants made payments on the mortgage and when the case was converted to chapter 7 the mortgage had been reduced to $20,034.20. The Defendants entered into a reaffirmation agreement with the Bank to pay the remaining mortgage debt. Due to payments made by the Defendants, at the time of conversion the equity had increased to $42,665.80. The Trustee claims the equity on the conversion date, less any exemption to which the Defendants' may be entitled, is property of the chapter 7 bankruptcy estate. In other words, the Trustee claims the increased equity created by the Defendants' payments on the mortgage during the chapter 13 case inured to the benefit of the chapter 7 estate. Obviously the Defendants disagree, and argue that the equity to which the Trustee is entitled must be determined as of the date the chapter 13 case was filed, not the conversion date.

---

[2] 11 U.S.C. § 101 *et seq*, and herein the "Code." All "Section" references are to a section or other subdivision of the Code.

[3] The Bank was originally named as a defendant, but was later dismissed.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT:

In his Complaint, the Trustee asks the Court to determine the interest of the chapter 7 estate in the Defendants' real property. As mentioned, the Trustee claims the equity as of the conversion date belongs to the estate, while the Defendants argue the equity should be determined as of the chapter 13 petition date. In their Motion, the Defendants assert there are no material facts in dispute and that the correct application of Section 348(f)(1) to these undisputed facts entitle them to a judgment as a matter of law with regard to the issue of when the equity should be determined. The exact amount of the equity to which the Trustee would be entitled, if any, is not addressed by the Defendants' Motion.

Fed.R.Civ.P. 56(c) is made applicable to Rule 7056 in bankruptcy proceedings. *Asbestos Settlement Trust v. City of New York (In re Celotex Corp.)*., 487 F.3d 1320, 1328 (11th Cir. 2007). Summary judgment is appropriate where, as here, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229 (11th Cir. 2003). The Court may consider pleadings, discovery, and affidavits submitted in ruling on such a motion. *Id.* The burden of proof lies with the movant, and the Court must view all materials presented and all factual inferences in the light most favorable to the non-moving party. *Id.* The Court finds that the Defendants have met their burden.

## CONCLUSIONS OF LAW:

The chapter 13 case was filed before the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), but it was converted to chapter 7 after BAPCPA went into effect. Nonetheless, Section 348(a), which was not amended by BAPCPA, provides that

3

conversion "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." Thus, the pre-BAPCPA Code controls the outcome of this adversary proceeding, and in particular pre-BAPCPA Section 348(f)(1).[4]

Section 348(f)(1) reads as follows:

> (f)(1) Except as provided in paragraph (2) [not applicable here], when a case under chapter 13 of this title is converted to a case under another chapter under this title –
> (A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion; and
> (B) valuations of property and of allowed secured claims in the chapter 13 case shall apply in the converted case, with allowed secured claims reduced to the extent that they have been paid in accordance with the chapter 13 plan.

The parties agree that pursuant to Section 348(f)(1)(A), the estate in the converted case consists of property in the chapter 13 estate as of the petition date to the extent such property remained in possession or control of the Defendants on the date of conversion. To determine what was estate property at the time the chapter 13 was filed requires an examination of Sections 541(a) and 1306. In pertinent part Section 541(a) provides:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
> (1) Except as provided in subsections (b) and (c)(2) of this section [not applicable here], all legal or equitable interests of the debtor in property as of the commencement of the case.

Section 1306(a) provides that, in addition to the property set out in Section 541, property of the chapter 13 estate includes certain property acquired by a debtor after the petition date. However,

---

[4] Unless indicated otherwise, all references and cites to Sections of the Code are pre-BAPCPA.

4

under Section 348(f)(1)(A) such after-acquired property does not become property of the chapter 7 estate upon conversion.

The parties also agree that the chapter 7 estate includes the equity existing in the Defendants' real property at the time the chapter 13 petition was filed, and that the value of the real property is determined as of the chapter 13 filing date. The parties further agree, as does most of the case law,[5] that increased equity resulting from post petition appreciation is not estate property in the converted case. The parties' views diverge at the point of determining who is entitled to the increased equity resulting from mortgage payments made by the Defendants while the case was under chapter 13.

The Trustee relies on Section 348(f)(1)(B) which provides that "allowed secured claims [shall be] reduced to the extent that they have been paid in accordance with the chapter 13 plan," and takes the position that the estate is entitled to the equity in the property resulting from the Bank's claim being reduced by payments made during the chapter 13. The Trustee asserted in his Response that:

> Applying the plain language of the statute to the facts set forth in the Defendants' Motion for Partial Summary Judgment yields the following result: the Defendants' real property is property of their Chapter 7 bankruptcy estate having the same value as of the time of the filing of their Chapter 13 bankruptcy case, but only encumbered to the extent of the value of the claim secured by such property upon conversion of the case to Chapter 7.

Trustee's Response at p. 2.

The Trustee cited *In re Wegner*, 243 B.R. 731 (Bankr. D. Neb. 2000), in support of his position. In *Wegner*, the debtor paid down her mortgage debt during the pendency of her chapter 13 case. *Id*. at 732. She attempted to claim a homestead exemption when she converted her case. *Id*. at 733. The trustee objected on the grounds that when the debtor filed chapter 13 there was no

---

[5] See n. 8 *infra*.

5

Case 09-40016-JJR   Doc 26   Filed 07/31/09   Entered 07/31/09 14:15:15   Desc Main
Document      Page 5 of 10

equity in which she could claim a homestead exemption. *Id*. The court determined that the equity resulting from appreciation was not property of the estate because of Section 348(f)(1). *Id*. at 734-35. However, the equity resulting from the debtor's payments during the chapter 13 case was treated differently. According to the *Wegner* court, Section 348(f)(1) protects equity cushions resulting from property appreciation "by using the Chapter 13 unappreciated value for purposes of the successor Chapter 7 case. . . . Section 348 does not explicitly protect an equity cushion that is created by payments made during the pendency of the Chapter 13 case." *Id*. at 735.

The Defendants would have this Court calculate the equity based on the property value and outstanding mortgage debt as of the chapter 13 petition date. In *In re Pruneskip*, the Bankruptcy Court for the Middle District of Florida adopted the position taken by Defendants, holding that the chapter 7 trustee was not entitled to a turnover of equity since there was no equity as of the filing date. *In re Pruneskip*, 343 B.R. 714, 716 (Bankr. M.D. Fla. 2006).

In *Pruneskip*, the debtor owned two 1998 Ford Windstars when he filed his chapter 13 case, each encumbered by a lien that exceeded the value of the vehicle. *Id*. at 715. The lienholders filed claims but were not paid through the trustee. *Id*. After the debtor converted his case, the chapter 7 trustee filed a motion seeking turnover of the non-exempt equity in the Windstars that had accrued during the pendency of the chapter 13 case. *Id*. at 716. The bankruptcy court defined the issue as whether the petition date or the conversion date controlled for determining whether or not there is equity. *Id*. at 716. The court examined other decisions addressing what becomes property of the estate in a converted case:

> Section 348(f) was enacted to resolve a split in the law about what property is included in the bankruptcy estate when a debtor converts from Chapter 13 to Chapter 7. In accordance with Section 348(f)(1), the Court of Appeals for the Fifth Circuit held, in *In re Stamm*, 222 F.3d 216 (5th Cir.2000), that postpetition wages in the hands of the Chapter 13 Trustee

should be returned to the debtors because they were not part of the Chapter 7 estate. *See In re Zamora*, 274 B.R. 268 (Bankr.W.D.Tex.2002) (funds remaining in trustee's hands upon conversion belong to the debtor). The issue as presented to this Court is simply stated, that is, does the petition date or the conversion date control when determining whether there is equity in the vehicles when a Chapter 13 case is converted to a Chapter 7 case. In the case of *In re Bobroff*, 766 F.2d 797 (3rd Cir. 1985), the court held that a tort claim, which arose after the debtor filed his petition under Chapter 13, was not property of the estate upon the case being converted to another Chapter. In the case of *In re Sargente*, 202 B.R. 1023 (Bankr.S.D.Fla.1996), the court held the property of the estate and the debtor's equity in the property of the estate is determined as of the date of the debtor's filing his Chapter 13 petition, and not the date on which the debtor converted to Chapter 7. The court in the case of *In re Nichols*, 319 B.R. 854 (Bankr.S.D.Ohio 2004) held that it was not the intention of Congress that a Chapter 13 debtor should lose the benefit of equity accrued in an asset because the debtor complied with the Chapter 13 plan payments. Thus, the equity in the collateral, which accrued prior to the conversion to a Chapter 7, did not become property of the debtor's estate following the conversion.

343 B.R. at 716-717.

Persuaded by these decisions, the *Pruneskip* court determined that equity should be determined as of the chapter 13 filing date and held that the trustee was not entitled to collect any equity since none existed as of the filing date. *Id*. at 717.

The Trustee argues that *Pruneskip* is not applicable to this case because in *Pruneskip* payments were made directly from the debtor to the secured creditors, or in other words "outside the Chapter 13 plan." As noted by the Trustee, Section 348(a)(1)(B) provides that secured claims will be reduced "to the extent that they have been paid in accordance with the chapter 13 plan;" the inference being that Section 348(a)(1)(B) does not apply when claims were paid directly by the debtor to the creditor.[6] This Court disagrees. A plan may provide that collateral will be surrendered,

---

[6] Often debtor's chapter 13 plans provide for a mortgage to be paid directly by the debtor to the secured creditor instead of from distributions of plan payments through the chapter 13 trustee. Accepting the Trustee's argument would lead to mortgage creditors receiving a potential windfall when cases are converted to chapter 7 because the amount of their secured claim would not be reduced by the payments received from the debtor during the chapter 13 case. The foregoing example, which would be an absurd result, is ample reason to construe Section 348(f)(1) in favor of allowing a debtor to retain the equity resulting from pre-conversion

7

or that the claims secured by the collateral will be paid, whether through the trustee, directly by the debtor, or by some third party. The chapter 13 scheme contemplates payments may be made on secured debts regardless of who remits the payments to the secured creditors. Whether the plan provides for payment of a secured claim through disbursements from the trustee or directly by a debtor, the claim is still provided for, and being paid pursuant to, the terms of the plan.

During oral argument, counsel for Defendants stressed that the legislative history of the 1994 amendments to Section 348(f)(1) indicated that debtors are to be encouraged to make payments in chapter 13 rather than filing under chapter 7, and they should not be penalized for attempting to repay their debts in chapter 13 although they may later find it necessary to convert. The relevant legislative history reads as follows:

> This amendment would clarify the Code to resolve a split in the case law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7. The problem arises because in chapter 13 . . ., any property acquired after the petition becomes property of the estate, at least until confirmation of the plan. Some courts have held that if the case is converted, all of this after-acquired property becomes part of the estate in the converted chapter 7 case, even though the statutory provisions making it property of the estate do not apply to chapter 7. Other courts have held that the property of the estate in a converted case is the property the debtor had when the original chapter 13 petition was filed.
>
> These latter courts have noted that to hold otherwise would create a serious disincentive to chapter 13 filings. For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home, to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.

H.R. Rep. No. 103-835, at 57 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3366.

---

payments on secured claims.

8

Case 09-40016-JJR    Doc 26    Filed 07/31/09    Entered 07/31/09 14:15:15    Desc Main
Document      Page 8 of 10

According to the Defendants, construing Section 348(f)(1)(B) to provide that a decrease in a secured creditor's claim increases the equity available to the chapter 7 estate is contradictory to the what Congress intended to accomplish through the 1994 amendment. The Trustee argues that the plain language of the statute controls over congressional intent. Nonetheless, Section 348(f)(1) can be construed in a way that complies with the "plain language" rule of statutory construction, and still honors congressional intent.

Section 348(f)(1)(A) establishes the original chapter 13 petition date as the date on which a hypothetical inventory is to be conducted to determine what property will be in the estate of the converted case.[7] This Court is of the opinion that the amount of equity remaining after deducting secured claims encumbering such property should also be determined based on the secured claim outstanding on the petition date.

Simply stated, subparagraph (A) of Section 348(f)(1) tells us what property will be in the chapter 7 estate, and subparagraph (B) tells us that although valuations of property and secured claims do not change after conversion, secured claim holders must give credit for payments received during the chapter 13 – the latter stating the obvious to avoid giving secured creditors a windfall. Nothing in subparagraph (B) requires that equity from a debtor's payments on secured claims during the chapter 13 case should go into the chapter 7 estate. Any perceived conflict between the "plain meaning" of Section 348(f)(1) after the 1994 amendments and the Legislative History disappears when subparagraphs (A) and (B) are construed as stated above. Moreover, this Court is of the opinion that the Trustee's position would extend the language of Section 341(f)(1)(B) beyond what was intended by Congress and lead to a inexplicable, if not absurd, result.

---

[7] Section 348(f)(1)(A) continues by eliminating from the chapter 7 estate property which the debtor no longer has in his possession or control.

9

There is a consensus among courts that equity attributed to appreciation in a property's value may not be claimed by the trustee in a converted case.[8] Such appreciation may come from an overall increase in market values – inflation – and from increased value caused by renovations to the property paid for by a debtor. Why should increased equity from renovations paid for by a debtor be treated differently from equity resulting from a debtor's payments of a mortgage? Both arise from money spent by the debtor during his chapter 13 case and there should be no distinction between how the two are treated. Similarity, after the commencement of a chapter 13 case, it is not uncommmon for debtors to purchase homes and automobiles utilizing post petition, purchase money secured debt. (Hopefully, such purchases and debts are first approved by the court and trustee.) Such homes and automobiles are assets acquired after the filing date of the chapter 13 case, so under Section 348(f)(1)(A) they are not property of the estate in the converted case, and any equity, no matter how large, may not be claimed by the chapter 7 trustee. Why should equity in a post petition asset created by a debtor's payment of a secured debt be treated differently from similar equity in property owned on the filing date? Logically and equitably there should be no difference.

Pursuant to Rule 9021, a separate Order will be entered consist with this opinion.

Dated: July 31, 2009

>/s/ James J. Robinson
> JAMES J. ROBINSON
> United States Bankruptcy Judge

---

[8] *Wegner*, 243 B.R. at 734-35; *In re Niles*, 342 B.R. 72, 76 (Bankr. D. Ariz. 2006); *In re Page*, 250 B.R. 465, 465 (Bankr. D.N.H. 2000).